## TAYLOR v. COMMISSIONER OF INTERNAL REVENUE.
### No. 347.

Circuit Court of Appeals, Second Circuit.
April 15, 1935.

---

1929, and paid a tax thereon at the rate of 12½ per cent. The Commissioner in auditing the return held that the profit was taxable as ordinary income and assessed a deficiency of $51,353.70 against the taxpayer.

Under section 101 (a), (c) (1), and (8) of the Revenue Act of 1928 (26 USCA § 2101 (a), (c) (1, 8), taxpayers were allowed to pay a tax of 12½ per cent. upon capital net gain realized from any sale of capital assets consummated after December 31, 1921. Subdivision (c) (8), § 101, supra (26 USCA § 2101 (c) (8), defined capital assets as property held by the taxpayer for more than two years which was not held "primarily for sale in the course of his trade or business. * * *"

The questions before us are: (1) Whether the shares of stock sold by the taxpayer were held primarily for sale in the course of his trade or business; and, if not thus held primarily, (2) whether they were held as capital assets for more than two years?

The Commissioner, in the 60-day letter in which he notified the taxpayer of a deficiency of $51,353.70 in his 1929 income taxes, stated in substance that the taxpayer was a trader, rather than an investor, and assessed the gain which the latter had reported at ordinary rates rather than at 12½ per cent. The Board affirmed the Commissioner, both because the taxpayer had not shown that he was not a dealer and because he had not shown that he had held the stock upon which the gain was reported for more than two years.

There can be little doubt that the Board reached a wrong conclusion when it held that the taxpayer was a trader in securities. He was a busy lawyer, who gave practically all his time to his profession and very little to the purchase or sale of stocks. The shares of the Public Service Corporation of New Jersey, which he purchased, were many of them held for more than two years and were all, or nearly all, held until the panic in the autumn of 1929 made their sale inevitable unless he was prepared to weather the financial depression for an indefinite period. The mere amount and value of the shares of Public Service Corporation, or other stocks, in which the taxpayer dealt, did not, in our opinion, make him a "trader," or his transactions in corporate securities a "business" in the purchase of stocks held "primarily for sale." It seems plain that the shares in question were not

Fred A. Woodis, of Washington, D. C. (Isaac R. Oeland, of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and J. Louis Monarch and Ellis N. Slack, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner reported as net gain the sum of $490,006.67 realized from the sale of 14,000 shares of stock of the Public Service Corporation of New Jersey in the year

"primarily held for sale in the course of * * * trade or business * * *" and that, if they were held for more than two years prior to sale, the taxpayer had the right to avail himself of the 12½ per cent. tax on such profits as their sale yielded. We must, therefore, determine whether the taxpayer, who had the burden of proof, established before the Board that the 14,000 shares, from which he realized a profit of $490,006.67, were held by him for more than two years. After careful consideration we feel convinced that he has not sustained the burden.

The difficulty with the petitioner's proof is that it failed to show that the 14,000 shares of stock which he sold were purchased prior to October, 1927, or two years before their sale. To establish the length of time during which he held the shares on which he reported a taxable gain it was necessary for him to prove when he disposed of his other holdings of Public Service stock, and that information he neglected to give.

The taxpayer testified that at the end of 1925 he had on hand 4,500 shares, 2,533 of which were purchased in August of that year. He said that he purchased 800 more shares in January, 1926; 600 in January, 1927; 400 in February, 1927; 1,800 in April, 1927; 200 in June, 1927; and 1000 on September 27, 1927. The 4,500 and 800 shares acquired prior to 1927 were split into thirds so that on September 27, 1927, when the taxpayer made his last purchase for that year, he appears to have had 19,900 shares on hand. He testified that at the end of 1928 he owned 25,000 shares, and in 1929, 35,000 shares, and that according to his best recollection he sold the entire 35,000 shares in October and November, 1929. He likewise testified that he sold no Public Service stock between 1925 and October, 1929 (fols. 96, 111, and 118). In computing the profit for his 1929 income tax return on the sales of 14,000 shares, the petitioner took the prices which he testified that he had paid for 13,999 shares purchased prior to and on September 27, 1927 (fols. 86–90), aggregating $440,733.33, and deducted that total from $930,740, the amount which he realized from the sale of 14,000 shares on October 29, 1929, and November 7 and November 14 of the same year. The difference equaled approximately $490,-007, the amount that he reported as gain in his income tax return. It is argued on his behalf that this shows that he had held

the 14,000 shares for more than two years, but we cannot see how any such result follows.

On October 1, 1929, the taxpayer had on hand 35,000 shares of stock. He made no proof as to the dates when any of the stock but the 14,000 shares were sold. Of the 35,000 shares only 19,900 were purchased more than two years before the sales, and the dates of purchase of the remaining 15,100 shares are not given. If the taxpayer were to trace the specific shares purchased more than two years before the sales in the autumn of 1929, he would have to show that the $930,749 which the 14,000 shares yielded was derived from the old stock. But he testified before the Board that "he could not identify share for share or certificate for certificate * * * any of the stock sold" and, instead of relying upon tracing to prove that he had held the 14,000 shares more than two years, stipulated with the Commissioner to adopt the "first in first out" method of identification. Under that method, it cannot be said that sales may not have been made prior to October 29, 1929 (when the first sales of stock upon which the taxpayer computed his gain began), that were sufficient to exhaust the entire 19,900 shares of stock that had been purchased more than two years before or that the sales of the 14,000 shares were not made solely from stock purchased in 1928 and 1929 to which the 12½ per cent. rate would not apply.

When the 19,900 out of 35,000 shares on hand were purchased more than two years before the sales of the entire block and all the 35,000 shares were sold in October and November, 1929, it seems unlikely that the 14,000 shares in question were not in part among the 19,900 shares of the old stock. But whether they were or were not is entirely speculative and the taxpayer had the burden of showing that the shares for the sale of which he reported a gain of $490,007 were among those purchased before the two year period.

We realize how unsatisfactory it is to decide a litigation upon the failure of one of the parties to sustain the burden of proof but it is less unsatisfactory here than in some other situations. The taxpayer had a far better chance to find out when he bought and sold each share of stock than had the Commissioner, and he ought to have been able to show clearly when he made the sales, in what order, and at what prices. Without such information, it is quite im-

possible for us to know whether the sales in question were of stock that he had held for more than two years.

■ It is argued that the parties were only litigating whether the taxpayer held the 14,000 shares "primarily for sale in the course of his trade or business" and that the decision of that point in his favor ought to end the litigation. But we are satisfied that the pleadings, the testimony, and the opinion of the Board show that there was no such limitation of the issues. The denial in respondent's answer that the stock sold had been held for more than two years plainly raised the issue we have discussed, and the proof adduced by the taxpayer, instead of settling it in his favor, left the matter in the air.

Though the taxpayer was not a trader, he failed to show that the sales of the 14,000 shares on which he reported the gain were of stock that he had held for more than two years. In such circumstances, the Board was bound to uphold the Commissioner in applying ordinary rates to the gain which the taxpayer realized.

Order affirmed.